IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINTECH REPAIR, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:12-cv-05244-O |
| RECOVERY & DISTRIBUTION SERVICES, LLC d/b/a RDS, | § § § § | |
| Defendant. | § § § | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendant/Counterclaimant's Brief Re: Subject Matter Jurisdiction (ECF No. 53), filed December 16, 2013, and Plaintiff/Counter-Defendant's Brief in Support of Jurisdiction (ECF No. 54), filed December 19, 2013. Having reviewed the parties' briefs and the applicable law, the Court finds that Plaintiff Mintech Repair, LLC's claims should be and are hereby **DISMISSED without prejudice** for lack of subject matter jurisdiction. Additionally, Defendant's counterclaims are **DISMISSED without prejudice**.

I.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Mintech Repair, LLC ("Plaintiff") is an engineering company that services telecommunications equipment, and Defendant Recovery & Distribution Services, LLC ("RDS" or "Defendant") is an Arizona limited liability company that brokers transactions between servicers and end-users of telecommunication circuit boards. Pl.'s 1st Am. Compl. ¶¶ 2, 5, 6, ECF No. 6. In 2009, after submitting a bid, Plaintiff was awarded a three-year requirements contract ("Contract") for services on telecommunication circuit boards supplied by RDS. *Id.* ¶ 7. The Contract executed

between Plaintiff and RDS had a term running from October 2009 until October 31, 2012. *Id.* After the Contract expired, Plaintiff agreed to perform additional services for RDS and, Plaintiff alleges, that RDS agreed to pay Plaintiff for these services. *See id.* ¶ 15; Def.'s Answer 1st Am. Compl. & Def.'s Countercl. ¶ 15, ECF No. 8.   After the Contract was executed, the Parties encountered problems. Specifically, Plaintiff alleges that RDS routinely defaulted on payment terms, failed to ship goods to Plaintiff for servicing, disputed "its entire open balance with Plaintiff on the basis of unjustified credits," and made false accusations regarding goods. *See* Pl.'s 1st Am. Compl. ¶¶ 13, 17, ECF No. 6.

Plaintiff filed suit against RDS on December 26, 2012, and asserted the following claims: (1) breach of contract, (2) quantum meruit, (3) promissory estoppel, (4) assumpsit for money had and received, (5) sworn account, (6) fraud and/or negligent misrepresentation, and (7) negligence. *See generally id.*; Pl.'s Original Compl., ECF No. 1. Plaintiff asserted the Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendant are diverse and the amount in controversy exceeds $75,000. Pl.'s 1st Am. Compl. ¶ 3, ECF No. 6.

Plaintiff's alleged damages include: $56,222.00 for an unpaid open account balance; $2,700 for expenses spent obtaining rare parts; and not less than $50,000 in lost profits. *Id.* ¶ 18. On December 10, 2013, the Court granted summary judgment against Plaintiff on its lost profits damages claim. *See generally* Order, Dec. 10, 2013, ECF No. 52. Defendant moved for summary judgment on lost profits after Plaintiff's President and CEO Todd Whitley ("Whitley") repeatedly answered "no comment" to any question regarding lost profits during his deposition. *See* App. Supp. Def.'s Mot. Partial Summ. J. Ex. 6 (Whitley Dep.), App. 46-47, ECF No. 38-6. Plaintiff failed to provide any evidence in support of lost profits damages in response, instead choosing to allow the complaint to

2

speak for itself. *See* Pl.'s Br. Supp. Resp. Def.'s Mot. Partial Summ. J. 8-9, ECF No. 40-1. In conjunction with its order granting partial summary judgment, the Court ordered the parties to brief whether the amount in controversy alleged in Plaintiff's complaint was made in bad faith, and if so, whether the Court has subject matter jurisdiction over this matter. Order 4-5, Dec. 10, 2013, ECF No. 52. Defendant filed its brief on December 16, 2013, and Plaintiff filed its brief on December 19, 2013 (ECF Nos. 53-54). Accordingly, this matter is ripe for adjudication.

## II.     LEGAL STANDARD

Because federal courts are courts of limited jurisdiction, they must constantly examine their basis of jurisdiction. *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981). District courts have original jurisdiction in civil actions where the matter in controversy exceeds $75,000 and complete diversity exists between the parties.  28 U.S.C. §  1332(a). The party invoking federal jurisdiction bears the burden of establishing the amount in controversy exceeds $75,000, and unless the law provides otherwise, the amount claimed by the plaintiff in good faith controls. *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Generally, the amount in controversy is determined at the time of filing, and post-filing events do not defeat jurisdiction. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289-90.

Where post-filing events, however, "suggest that the amount in controversy allegation in the complaint was made in bad faith," courts may re-evaluate the amount in controversy. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005) (citing *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)); *see also St. Paul Mercury Indem. Co.*, 303 U.S. at 289 ("[Plaintiff's] good faith in choosing the federal forum is open to

challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit.") . "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289.

### III.   ANALYSIS

In its reply in support of its motion for summary judgment, Defendant stated, "[i]t appears that the claim for $50,000 in lost profits has always been illusory. Apparently, the claim was imagined to justify federal jurisdiction." Def.'s Reply Supp. Mot. Partial Summ. J. 5 n.3, ECF No. 44. Because the summary judgment on lost profits brought the amount in controversy below the jurisdictional requisite and because Defendant suggested Plaintiff asserted these damages in bad faith, the Court ordered the parties to file briefs addressing whether the amount in controversy alleged in Plaintiff's complaint was made in bad faith, and if so, whether the Court has subject matter jurisdiction over this matter. Order 5-6, Dec. 10, 2013, ECF No. 52.

In its brief, Defendant contends Plaintiff's claim for $50,000 in lost profits was made in bad faith and asks the Court to dismiss Plaintiff's claims with prejudice but allow Defendant's counterclaims to proceed. *See generally* Def.'s Br., ECF No. 53. Specifically, Defendant points to Whitley's deposition testimony in which Whitley could not even answer whether Plaintiff was seeking lost profits damages, Plaintiff's inability to provide evidence on lost profits, and the absence of lost profits in Plaintiff's pre-suit letter attempting to settle the billing dispute. *Id.* at 4,6. Plaintiff contends

that lost profits were asserted in good faith and that Whitley was not aware of the formula used to calculate lost profits until after his deposition and Defendant's summary judgment response. *See generally* Pl.'s Br., ECF No. 54. Plaintiff submitted a declaration of Whitley in which Whitley puts forth the formula he has recently learned.[1]

As the party invoking federal subject matter jurisdiction, Plaintiff bears the burden of demonstrating the amount in controversy exceeds $75,000. *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). The Court is not persuaded by Plaintiff's explanation as to why Whitley—its sole member, president, and CEO—could not address lost profits until after the Court granted summary judgment on this claim. *See* Am. Compl. ¶ 1, ECF No. 6. During Whitley's deposition, Defendant's counsel asked Whitley whether Plaintiff was seeking $50,000 in lost profits as asserted in its complaint to which Plaintiff's counsel objected stating, "[t]he document speaks for itself." *See* App. Supp. Def.'s Mot. Partial Summ. J. Ex. 6 (Whitley Dep.), App. 46-47, ECF No. 38-6. Defendant's counsel pressed on asking what damages Plaintiff sought:

> [Defendant's Counsel]: Yes. And I'm asking the CEO of the company what he's claiming.
>
> [Whitley]: I have no answer—I have no comment on that. Sorry.
>
> [Defendant's Counsel]: Well, are you or are you not asking for lost profits of not less than $50,000 during the last two months of your contract term in this lawsuit?
>
> [Plaintiff's Counsel]: Objection.

---

[1] Pl.'s Br. Ex. A (Decl. Whitley), ¶ 4, ECF No. 54-1 ("I was unaware of how those damages were calculated because I did not participate in calculating them. The person responsible for calculating those damages was James Hoots, Mintech's Operations Manager. Mr. Hoots used the following formula to calculate lost profits: (One Hundred Twenty-Two expected units multiplied by 2 months) x $206.83 the negotiated price per unit, which equaled an expected profit $50,466.52.").

[Defendant's Counsel]: If not, that would clarify this for me.

[Plaintiff's Counsel]: I'm going to instruct you not to answer. The document is what it is. The lawyers have asserted what they've asserted. At this point, we're not waiving our rights to cover any amounts that are in the actual lawsuit.

[Defendant's Counsel]: well, that's—your legal position is stated for the record very ably. As the CEO of the company, you have no comment on trying to assert $50,000 in lost profits?

[Whitley]: I have no comment on what is written.

[Defendant's Counsel]: All right. Did you lose $50,000 during the last two months of your contract with RDS?

[Whitley]: I have no comment.

*Id.*

Plaintiff was given a second opportunity to present evidence on its claim for lost profits damages when Defendant moved for summary judgment on this ground. *See* Br. Supp. Def.'s Mot. Partial Summ. J. 4, 6-7, ECF No. 37. Plaintiff did not take this opportunity; instead Plaintiff responded that it "never disavowed his claim for lost profits, rather he simply allowed his live pleading to speak for itself . . . ." Pl.'s Br. Supp. Resp. Def.'s Mot. Partial Summ. J. 8-9, ECF No. 40-1. In light of Plaintiff's decision to rest on its pleading and its failure to produce any evidence of lost profits, the Court granted partial summary judgment. *See* Order 4-6, Dec. 10, 2013, ECF No. 52.

Plaintiff now contends that its assertion of lost profits was nevertheless made in good faith and that Plaintiff's sole member, CEO, and president, Whitley, was simply unaware of the means by which lost profits were calculated. *See generally* Pl.'s Br., ECF No. 54. Plaintiff further contends that

this formula was created pursuant to the terms of the parties' Contract, yet fails to provide any evidence of the terms of the Contract or Plaintiff's entitlement to such damages. *Id.* at 5 ("Mintech used a systematic formula based on the plain language of the contract between the parties to arrive at the $50,000 in lost profits.").

"A plaintiff's subjective belief, alone, cannot be the controlling factor where, pre-trial, there is '[a] showing that, as a legal certainty, [the] plaintiff cannot recover the jurisdictional amount.'" *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) (quoting *Am. Mut. Liab. Ins. Co. v. Campbell Lumber Mfg. Corp.*, 329 F. Supp. 1283, 1285 (N.D. Ga.1971)). The Court finds that the $50,000 in asserted lost profits was never "in controversy" and was merely alleged in bad faith to establish federal subject matter jurisdiction. Accordingly, the Court will dismiss Plaintiff's claims against Defendant without prejudice. *See Verret v. Elliot Equip. Corp.*, 734 F.2d 235, 238 (5th Cir. 1984) ("[I]t would be inappropriate to enter any judgment on the merits when the dismissal is based on lack of subject matter jurisdiction.") (citing *Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir.1981)).  The Court declines to award sanctions.

Defendant asks the Court to retain jurisdiction over its counterclaims against Plaintiff because the counterclaims have an independent basis for federal subject matter jurisdiction.  Pl.'s Br. 6, ECF No. 54. "If an independent jurisdictional ground exists for a counterclaim, the district court can retain jurisdiction over the counterclaim even if the original claims are dismissed for lack of subject-matter jurisdiction." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 355 (5th Cir. 2004) (citing *Kuehne & Nagel (AG & Co) v. Geosource, Inc.*, 874 F.2d 283, 291 (5th Cir. 1989)).

Although the Court may retain the case, it declines to do so. Aside from its assertion of an independent basis of jurisdiction, Defendant offers no reason for the Court to retain jurisdiction nor

has it addressed whether Plaintiff should be able to reassert its claims as compulsory counterclaims, which, if allowed, would not address Plaintiff's inappropriate use of the lost profits allegation. *See* Def.'s Br. 6, ECF No. 53 ("The Court should allow RDS' counterclaims to proceed."). Accordingly, in its discretion, the Court declines to retain Defendant's counterclaims and those claims are hereby dismissed without prejudice to refiling.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that Plaintiff alleged lost profits damages in bad faith in order to establish federal subject matter jurisdiction. Accordingly, Plaintiff's claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction. Defendant's counterclaims are also **DISMISSED without prejudice**.

**SO ORDERED** on this **23rd day** of **December, 2013**.



_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**